# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN DOE, *individually and on behalf of all others similarly situated*,

                        Plaintiffs,

   v.

HERITAGE VALLEY HEALTH SYSTEM, INC. D/B/A HERITAGE VALLEY SEWICKLEY HOSPITAL, HERITAGE VALLEY BEAVER HOSPITAL AND HERITAGE VALLEY KENNEDY HOSPITAL, and HERITAGE VALLEY MULTISPECIALTY GROUP, INC.,

                        Defendants.

Case No. 2:23-cv-01044-WSH

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND

# TABLE OF CONTENTS

TABLE OF AUTHORTIES ................................................................................................ ii

I.   INTRODUCTION ................................................................................................... 1

II.  BACKGROUND ..................................................................................................... 2

   A.  Heritage Valley's Tracking Technology .......................................................... 2

   B.  Plaintiff's Claims and Heritage Valley's Removal .......................................... 3

   C.  The Meaningful Use Program ......................................................................... 4

III. ARGUMENT ........................................................................................................... 5

   A.  Heritage Valley Was Not "Acting Under" a Federal Officer When it Captured and Disclosed Plaintiff's PHI ............................................................ 5

     1.  Creating and Maintaining Heritage Valley's Website Is Not the Federal Government's "Duty" or "Task." ................................................ 5

     2.  Complying with the Program Cannot Create Federal Officer Jurisdiction ................... 7

   B.  There Is No Nexus Between Plaintiff's Claims and the Meaningful Use Program ............ 8

   C.  Heritage Valley's Removal Fails Because It Has Not Raised a "Colorable" Defense ....... 9

IV.  CONCLUSION ....................................................................................................... 10

## TABLE OF AUTHORTIES

Cases

*Doe v. UPMC,*
  2:20-cv-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020) ...................................................... 6

*Alton v. Medtronic, Inc.,*
  970 F. Supp. 2d 1069 (D. Or. 2013).......................................................................................... 10

*Browne v. Cedars-Sinai Health Sys.,*
  2023 WL 3095551 (C.D. Cal. Apr. 26, 2023)............................................................................ 7

*Buckman Co. v. Plaintiffs' Legal Committee.,*
  531 U.S. 341 (2001) .................................................................................................................. 10

*City & Cty. of Honolulu v. Sunoco LP,*
  No. 20-CV-00163, 2021 WL 531237 (D. Haw. Feb. 12, 2021)................................................. 9

*Crouch v. Saint Agnes Med. Ctr.,*
  2023 WL 3007408 (E.D. Cal. Apr. 19, 2023) ........................................................................... 7

*Doe v. BJC Health Sys.,*
  2023 WL 369427 (E.D. Mo. Jan. 10, 2023) .............................................................................. 6

*Doe v. Hoag Mem'l Presbyterian Hosp.,*
  2023 WL 3197716 (C.D. Cal. May 2, 2023)............................................................................... 7

*Doe v. ProMedica Health Sys.,*
  2020 WL 7705627 (N.D. Ohio Oct. 30, 2020)........................................................................... 7

*Est. of Maglioli v. All. HC Holdings LLC,*
  16 F.4th 393 (3d Cir. 2021) ............................................................................................. 2, 5, 7

*Golden v. N.J. Inst. of, Tech.,*
  934 F.3d 302 (3d Cir. 2019) ...................................................................................................... 2

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.,*
  790 F.3d 457 (3d Cir. 2015) ................................................................................................... 8, 9

*In re Meta Pixel Healthcare Litig.,*
  No. 22-CV-03580, 2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ........................................ 10

*Kraus v. Alcatel-Lucent,*
  No. 18-2119, 2018 WL 3585088 (E.D. Pa. July 25, 2018) ........................................................ 9

*Mohr v. Trustees of Univ. of Pennsylvania,*
  No. 23-CV-731, 2023 WL 3044594 (E.D. Pa. Apr. 20, 2023)............................................... 6, 7

*Papp v. Fore-Kast Sales Co.*,
   842 F.3d 805, 815 (3d Cir. 2016) ............................................................................ 9

*Watson v. Philip Morris Cos.*,
   551 U.S. 142, 127 S. Ct. 2301 (2007) ............................................................... 5, 6, 8

Statutes

28 U.S.C. § 1442 ............................................................................................................ 4
42 U.S.C. § 300jj-31 ...................................................................................................... 4

Regulations

42 C.F.R. § 495.104 ........................................................................................................ 4
42 C.F.R. § 495.20-24 .................................................................................................... 4
45 C.F.R. § 164.508(a)(1) ............................................................................................ 10

## I.  __INTRODUCTION__

Heritage Valley cannot invoke "federal-officer-removal" because it did not act as or under a "federal officer" when it captured and sent Plaintiff's private health information to Facebook without his consent. No federal office or authority empowered Heritage Valley to send Plaintiff's information to Facebook. Quite the opposite. Heritage Valley's conduct violates Pennsylvania state law; thus, state court is where this case belongs.  Because Heritage Valley never acted under any federal authority, the Court should remand this case to state court.

Plaintiff sued Heritage Valley because it surreptitiously tracks and discloses its patients' activities on its website. That activity includes searching for providers, researching treatments, scheduling appointments, and viewing medical records. Plaintiff expected Heritage Valley to protect this personal health information ("PHI") and safeguard it from third parties, complying with its duties under company policy and state law. However, Heritage Valley violated those duties—intentionally. It embedded "tracking pixels" on its website and camouflaged them to remain invisible to users. Those pixels include Facebook's "Meta Pixel," a tracking tool that captures everything a patient does on Heritage Valley's site and sends that data to Facebook, including information identifying who the patients are.

Plaintiff never agreed that Heritage Valley could barter away his PHI to Facebook. Thus, he sued Heritage Valley in state court to stop its misconduct. Heritage Valley then removed this case, alleging that Heritage Valley was acting "under a federal officer" when it surreptitiously disclosed its patients' PHI to third parties. But the federal government never authorized Heritage Valley's misconduct, nor did it empower Heritage Valley to act as its officer. That is fatal.

To show federal officer jurisdiction, Heritage Valley must establish that: (1) it acted as a federal officer; (2) there is a nexus between its misconduct and its claimed federal authority; and

(3) Heritage Valley can assert a "colorable" federal defense. *Golden v. N.J. Inst. of Tech.*, 934 F.3d 302, 309 (3d Cir. 2019). Heritage Valley's removal fails on all grounds.

First, to prove it was acting as or under a "federal officer", Heritage Valley must show that its actions "assist or help carry out the *duties* of a federal superior" by "provid[ing] a service the federal government would itself otherwise have to provide." *Est. of Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 405 (3d Cir. 2021) (emphasis added). But the government never had a duty to build Heritage Valley's website or install tracking pixels to wiretap Heritage Valley's patients. Accordingly, Heritage Valley's removal argument fails.

Second, there is no nexus between Plaintiff's claims and any federal authority. Even if the government directed Heritage Valley to build a website (it did not), the federal government *never* directed Heritage Valley to intercept and disclose its patients' PHI to Facebook and advertisers.

Finally, Heritage Valley has not satisfied its burden to show a "colorable" defense. Heritage Valley claims the information it sent Facebook is not "protected health information" under HIPAA, but the government has already rejected that claim. Similarly, Heritage Valley says Plaintiff's claims are "preempted," but it does not specify what law preempts them or why.

Accordingly, for all these reasons, the Court should remand this case to state court.

## II.    <u>BACKGROUND</u>

### A.    <u>Heritage Valley's Tracking Technology</u>

Heritage Valley [1] is a healthcare system based in Beaver, Pennsylvania. Doc. 866-1 ("Compl.") ¶¶8-10. Heritage Valley operates a website at www.heritagevalley.org and "encourages patients to use digital tools on that website to seek and receive health services." *Id*.

---

[1] "Heritage Valley" refers to Heritage Valley Health System, Inc., d/b/a Heritage Valley Sewickley Hospital, Heritage Valley Beaver Hospital, Heritage Valley Kennedy Hospital, and Heritage Valley Multispecialty Group, Inc.

¶29. To that end, Heritage Valley also maintains a "patient portal" that patients can use to make appointments, view lab results and message with their providers. *Id*. ¶30. Heritage Valley promises patients that it will protect their PHI under its policies, explicitly promising never to share it with advertising companies: "[w]e do not partner with or have special relationships with an Ad Network companies. This means we do not give your information to third parties for advertising or marketing purposes." *Id*. ¶2.

But Heritage Valley broke its promise on a massive scale. Without telling patients, it embedded "automatic re-routing mechanisms" on its website that captured and disclosed their PHI to "Facebook, Google, and other third-party marketing companies." *Id*. ¶31. Heritage Valley hid these mechanisms in the site's software code, embedding "tracking pixels" that "are purposefully camouflaged to remain invisible to users." *Id*. ¶59. That includes Facebook's "Meta Pixel." *Id*. ¶75. Pixel tools like the Meta Pixel "secretly track, intercept, record, and transmit every patient communication made on [the] website." *Id*. Once received, Facebook uses the data "for the purpose of targeted advertising." *Id*. ¶175. Disturbingly, this allows Facebook to collect data on patients' conditions, like addiction, and then target them with ads about services for those conditions. *Id*. ¶175.

To compensate Heritage Valley for disclosing its patients' health data, Facebook supplies it with web analytics. Those analytics inform Heritage Valley "about the ads they've placed on Facebook and Instagram and tools to target people who have visited their website[.]" *Id*. ¶141.

**B.    Plaintiff's claims and Heritage Valley's Removal**

Heritage Valley's misconduct violates Plaintiff's privacy rights, entitling him to sue Heritage Valley under Pennsylvania law. In his complaint, Plaintiff alleges Heritage Valley violated Pennsylvania's wiretapping law, *id*. ¶¶315-330, his right to privacy under common law

and Heritage Valley's "duty of confidentiality," *id*. ¶¶331-368, and that Heritage Valley "unjustly

enriched" itself because it exploited his PHI for profit. *Id*. ¶¶369-376.

Even though this case implicates only state-law claims, Heritage Valley removed it under

the Federal Officer Removal statue, 28 U.S.C. § 1442, claiming that its misconduct was

"undertaken pursuant to the federal government's extensive efforts to build a nationwide health

information infrastructure[.]" Doc. 866 ¶2.   Heritage Valley, however, does not claim that it

*contracted* to build a website with the federal government. Nor does Heritage Valley claim that

the government *required* it to build a website or patient portal.

### C.   The Meaningful Use Program

The Meaningful Use Program arose from the 2009 HITECH Act.  The Act's goal was to

encourage hospitals to "invest in the infrastructure necessary to allow and promote the electronic

exchange and use of [PHI.]" 42 U.S.C. § 300jj-31.  The program incentivizes hospitals to

participate by paying them to implement electronic records systems. 42 C.F.R. § 495.104.

But neither the HITECH Act nor the Meaningful Use Program mandate that the federal

government or its agencies create hospital websites or delegate any authority to hospitals to do

either on its behalf. Nor do they require hospitals to create and maintain a website or say what

those websites must include. *See* 42 C.F.R. § 495.20-24. More to the point, the Act and Program

do not require that hospitals track and disclose patient activities on their websites to third parties.

Indeed, the United States Department of Health and Human Services ("HHS") recently issued

guidance that, under HIPAA, health care providers may not "use tracking technologies in a manner

that would result in impermissible disclosures of [PHI]."[2]

---

[2] (HHS, *Use of Online Tracking Technologies by HIPAA Covered Entities and Business
Associates*, available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-
online-tracking/index.html, attached as Exhibit 1 ("HHS Guidance").)

III.   <u>**ARGUMENT**</u>

To remove this case under federal officer jurisdiction, Heritage Valley must establish that (1) it acted as a federal officer; (2) there is a nexus between its alleged misconduct and the asserted federal authority; and (3) it can assert a "colorable" federal defense. *Maglioli*, 16 F.4th 393, 404 (3d Cir. 2021). Heritage Valley cannot establish any factor, much less all three as the statute requires.  As a result, the Court should remand this matter.

A.     **Heritage Valley Was Not "Acting Under" a Federal Officer When It**
       <u>**Captured and Disclosed Plaintiff's PHI**</u>

Heritage Valley was not "acting under" a federal officer when it monitored, captured, and sent its patients' PHI to Facebook without their consent. To start, "private parties" like Heritage Valley are not "federal actors." *Maglioli*, 16 F.4th 393, 404.  And while private parties can invoke "federal-officer-removal" if they were "acting under" a federal officer, the phrase "acting under is not boundless." *Id*.  For example, "[m]erely complying with federal laws and regulations is not acting under a federal officer," even if the defendant is "highly supervised and monitored" and "subject to detailed regulations." *Id*. Accordingly, a defendant must "show something beyond regulation or compliance" to remove a case.  That "something" must "involve an effort to assist, or to help carry out, the federal superior's *duties* or *tasks*." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 145, 127 S. Ct. 2301, 2303 (2007) (emphasis added).

1.     **Creating and Maintaining Heritage Valley's Website is Not the**
       **Federal Government's "Duty" or "Task."**

Heritage Valley was not performing a government "duty" or "task" when it built its website because it was not "provid[ing] a service the federal government would itself otherwise have to provide." *Id*. No law tasks the government with creating and maintaining a website for Heritage Valley's patients, and the government has no duty to do so.

For just this reason, courts across the country have rejected the notion that a hospital participating in the Meaningful Use Program transforms the hospital into a federal actor: "CMS may thoroughly describe and fund its EHR goals, develop directives and guidelines, and define the governmental policies it is promoting. However, such directives do not, without more, bootstrap private persons who choose to adhere to nonbinding directives for financial gain into the category of persons 'acting under' the United States." *Mohr v. Trustees of Univ. of Pennsylvania*, No. 23-CV-731, 2023 WL 3044594, at *3 (E.D. Pa. Apr. 20, 2023). Indeed, because building hospital websites and digitizing patient medical records is not the government's "task or duty," Heritage Valley cannot pose as a federal officer. *See Doe v. BJC Health Sys.*, 2023 WL 369427, at *4 (E.D. Mo. Jan. 10, 2023), appeal filed No. 23-1107 (8th Cir. Jan. 20 2023) ("[I]t cannot be said that BJC's creation of a website and online patient portal fulfills a 'basic government task'").

In response, Heritage Valley cites only two cases claiming otherwise—both repudiated by courts across the country. In *Doe v. UPMC*, the court misfocused on the fact that the government paid the defendant for digitizing its records under the Meaningful Use Program: "The fact that the government offers payment in exchange for UPMC's voluntary participation in implementing a nationwide EHR network shows the relationship between UPMC and DHHS is less like the regulator-regulated relationship in *Watson* and more like the government contractor relationship in *Papp*." No. 2:20-cv-359, 2020 WL 4381675, at *7 (W.D. Pa. July 31, 2020). The problem with that reasoning, however, is that it does not address the key issue: whether the defendant was "provid[ing] a service the federal government would itself otherwise have to provide." *Maglioli*, 16 F.4th 393, 405. Because building websites for private hospitals is not a government "duty" or "task," the Program cannot transform its participants into officers. This is why the Eastern District of Pennsylvania declined to follow *UPMC's* reasoning in *Mohr v. Trs. of the Univ. of Pa.*, 2023

WL 3044594, at *5 ("Defendant is simply a private entity that voluntarily elects to engage in a federal incentive program for financial gain. This does not fall within even the broadest interpretation of the federal official removal statute.").  Likewise, *Doe v. ProMedica Health Sys.,* 2020 WL 7705627, at *2–3 (N.D. Ohio Oct. 30, 2020), simply adopted *UPMC* wholesale without any reasoning or analysis.

Both *UPCM* and *ProMedica* have been consistently rejected by federal courts analyzing the same issue.  *See, e.g., Crouch v. Saint Agnes Med. Ctr.*, 2023 WL 3007408, at *5 (E.D. Cal. Apr. 19, 2023) ("the Court concludes that Defendant's participation in the Meaningful Use Program is not the type of relationship sufficient to invoke federal jurisdiction."); *Doe v. Cape Cod Healthcare, Inc.*, No. 23-cv-10080, Dkt. 10 (D. Mass. Jan. 25, 2023) (same); *Doe v. Torrance Mem'l Med. Ctr.*, at 3 (C.D. Cal. Apr. 12, 2023) (same); *Browne v. Cedars-Sinai Health Sys.*, 2023 WL 3095551, at 2 (C.D. Cal. Apr. 26, 2023) (same); *Doe v. Hoag Mem'l Presbyterian Hosp.*, 2023 WL 3197716, at 3 (C.D. Cal. May 2, 2023) (same). The same result should follow here.

### 2.    Complying With the Program Cannot Create Federal Officer Jurisdiction.

Even if the federal government's Meaningful Use Program somehow "required" hospitals to build websites and disclose the PHI collected on them to third-party marketers (it does not), federal officer jurisdiction still would not exist because the Program is only a regulatory program. Supreme Court precedent holds that complying with a regulatory program does not transform entities into federal officers "acting under" federal authority. *Watson*, 551 U.S. at 153 ("a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone").

The same is true here. Complying with the Program was not Heritage Valley's "duty," even if the Program's requirements were "highly detailed." Heritage Valley complied with those details by choice, not mandate. And even if the Program set benchmarks to qualify for incentives, meeting

those benchmarks did not transform Heritage Valley into a government agent. As the *Mohr* Court put it: "[t]o be induced to comply is not enough and to be incentivized to comply is not enough." *Mohr*, No. 23-cv-731, 2023 U.S. Dist. WL 3044594, at *12 ("If even [the] 'considerable regulatory detail and supervision' [in *Watson*] does not trigger the federal officer removal statute, neither can CMS's incentive program."). As a result, any authority the government has under the Program cannot establish the "control" needed to transform participants into federal officers.

**B.    There is No Nexus Between Plaintiff's Claims and the Meaningful Use Program**

Heritage Valley's removal theory also fails because there is no nexus between Plaintiff's claims and Heritage Valley's participation in the Meaningful Use Program. The nexus or "causation" prong under § 1447(a) requires the defendant to show a "connection or association between the act in question and the federal office." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 471 (3d Cir. 2015) (internal quotations omitted). When applied to "non-governmental corporate defendants" like Heritage Valley, the defendant must "demonstrate that the acts for which they are being sued . . . occurred because of what they were asked to do by the Government." *Pennsylvania v. Sepulveda*, No. 3:13-CV-511, 2013 WL 5782383, at *4 (M.D. Pa. Oct. 25, 2013). In other words, a nexus exists when a plaintiff's claims target something the defendant did at the government's direction.

There is no "nexus" between Heritage Valley's misconduct and any government directive because the government never ordered Heritage Valley to capture and send patients' PHI to Facebook. In its removal notice, Heritage Valley cites only the Meaningful Use Program on this prong. Doc. 1. § E. But the Program's purpose was only to encourage hospitals to digitize their records and allow patients to access their resources online. Plaintiff's claims do not target those

efforts, nor do they implicate them. Instead, Plaintiff's claims target the tracking technology Heritage Valley embedded on its website—technology the Program does not require.

Heritage Valley also claims that the Meaningful Use Program "envisions" activities like the "tracking of online behaviors through source code and cookies and use of marking companies such as Facebook." Doc. 1 ¶57. But Heritage Valley does not cite any regulation or statute to support this notion, nor do any exist. As a result, Heritage Valley cannot meet its burden on this second factor.  *See City & Cty. of Honolulu v. Sunoco LP*, No. 20-CV-00163, 2021 WL 531237, at *7 (D. Haw. Feb. 12, 2021), aff'd, 39 F.4th 1101 (9th Cir. 2022) ("[I]f Defendants had it their way, they could assert any theory of the case, however untethered to the claims of Plaintiffs … [which] would completely ignore the requirement that there must be a causal connection[.]").

### C.     Heritage Valley's Removal Fails Because It Has Not Raised a "Colorable" Defense

Finally, Heritage Valley has not raised a "colorable federal defense" to Plaintiff's claims. The "colorable" defense "requirement assures that federal courts have Article III jurisdiction over federal officer removal cases." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 473 (3d Cir. 2015). A defense is "colorable" if "it could reasonably be asserted, given the facts presented and the current law, and could establish a complete defense at trial." *Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *3 (E.D. Pa. July 25, 2018) (citing *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 815 (3d Cir. 2016)).

Heritage Valley asserts only two defenses.  Neither are colorable. First, Heritage Valley says it "will argue that the [patient] information purportedly disclosed[...] is outside the purview of PHI protected by federal law." Doc. 1. ¶65. But Heritage Valley ignores that HHS has already rejected argument when it expressly provided that an entity regulated under HIPAA "may not use or disclose protected health information without a valid authorization." 45 C.F.R. § 164.508(a)(1);

see § 160.103 (defining PHI); *In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580, 2022 WL 17869218, at *8 (N.D. Cal. Dec. 22, 2022). Ex. 1 (HHS Guidance).

Second, Heritage Valley claims that it "will argue that federal law preempts Plaintiff's common law claims for alleged invasions of privacy and breach of fiduciary duty." Doc. 1 ¶67. But Heritage Valley never cites what law preempts Plaintiff's claims or why. Instead, it vaguely relies on *Buckman Co. v. Plaintiffs' Legal Committee.*, 531 U.S. 341 (2001) to suggest that Plaintiff's claims somehow implicate federal law.

*Buckman* does not apply. In that case, the Supreme Court addressed a plaintiff's claim that a bone screw manufacturer "fraudulently" represented its products to the FDA and, but for those misrepresentations, the FDA would not have approved the bone screws that injured plaintiff. 531 U.S. at 343. The Supreme Court held the plaintiff's tort claim was preempted by the Food, Drug, and Cosmetic Act because its provisions created the plaintiff's right to sue. *Id.* at 353. Not so here. Unlike the *Buckman* defendant, Heritage Valley has not argued Plaintiff's claims are "cognizable only by virtue of the provisions of [a federal law] itself, and would not be independently viable under state law absent those provisions." *See Alton v. Medtronic, Inc.*, 970 F. Supp. 2d 1069, 1097 (D. Or. 2013). Thus, Heritage Valley cannot invoke *Buckman* to defend its misconduct.

## IV.    <u>CONCLUSION</u>

For the reasons above, the Court should remand this case.

**RESPECTFULLY SUBMITTED,**
**COUNSEL FOR PLAINTIFF, INDIVIDUALLY**
**AND ON BEHALF OF ALL OTHERS**
**SIMILARLY SITUATED**

*/s/ Albert Belmont*
Albert Belmont, III, Bar No. 84817
George Bochetto, Bar. No. 27783
David P. Heim, Bar. No. 84323
John A. O'Connell, Bar. No. 205527
Ryan T. Kirk, Bar No. 329492
BOCHETTO & LENTZ, P.C.
1524 Locust St.
Philadelphia, PA  19102
Tel: (215) 735-3900

Foster C. Johnson (*pro hac vice forthcoming*)
David Warden (*pro hac vice forthcoming*)
Weining Bai (*pro hac vice forthcoming*)
AHMAD, ZAVITSANOS & MENSING, PLLC
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101

Samuel J. Strauss (*pro hac vice forthcoming*)
Raina C. Borrelli *(pro hac vice forthcoming)*
TURKE & STRAUSS, LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775

Dated: July 3, 2023

## <u>CERTIFICATE OF SERVICE</u>

Albert M. Belmont, III, Esquire, counsel for the Plaintiff in the above-captioned action, hereby certify that a true and correct copy of the Memorandum of Law in Support of Plaintiff's Motion to Remand was served on all counsel of record by the filing of this document through the ECF system this **3rd day of July, 2023.**

/s/ Albert M. Belmont, III
Albert M. Belmont, III, Esquire