# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John Doe, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Civil Action No.: 2:23-cv-1044-WSH |
| Heritage Valley Health System, Inc. d/b/a Heritage Valley Sewickley Hospital, Heritage Valley Beaver Hospital and Heritage Valley Kennedy Hospital, | Hon. W. Scott Hardy |
| and | |
| Heritage Valley Multispecialty Group, Inc., | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR REMAND**

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................2

    A.    Heritage Valley Properly Removed This Case Pursuant to 28 U.S.C. § 1442(a)(1). ..................................................................................................................2

          a.    Heritage Valley Acted Under a Federal Officer....................................2

    B.    Plaintiff's Claims Are "for or Relate to" Acts Under Color of the Federal Office..................................................................................................7

    C.    Heritage Valley Raises Colorable Federal Defenses to Plaintiff's Claims. ..................................................................................................................9

III. CONCLUSION ..................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arizona v. Manypenny*,
    451 U.S. 232 (1981) ........................................................................................................... 8

*Baker v. Atl. Richfield Co.*,
    962 F.3d 937, 942 (7th Cir. 2020) ..................................................................................... 6

*Bor-Son Building Corp.*,
    572 F.2d 174, 181 (8th Cir. 1978) ................................................................................... 10

*Cousin v. Sharp Healthcare*,
    No. 22-cv-2040-MMA (DDL), 2023 WL 4484441 (S.D.Cal. July 12,
    2023) ................................................................................................................................ 10

*Doe I v. UPMC*,
    No. 2:20-cv-359, 2020 WL 4381675 (W.D. Pa. Jul. 31, 2020) ........................... 2, 6, 10

*Doe v. ProMedica Health Sys., Inc.*,
    No. 20-cv-1581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020) ............................ 6, 10

*In re Commonwealth's Motion to Appoint Couns. Against or Directed to
    Def. Ass'n of Philadelphia*,
    790 F.3d 457, 462, 471-72 (3d Cir. 2015), as amended (June 16, 2015) ..................... 8

*Jefferson Cty., Ala. v. Acker*,
    527 U.S. 423 (1999) ........................................................................................................... 9

*Kurowski v. Rush Sys. for Health*,
    No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ...................................... 8, 9

*Maglioli v. All. HC Holdings LLC*,
    16 F.4th 393, 405 (3d Cir. 2021) ................................................................................... 6-7

*Mesa v. California*,
    489 U.S. 121 (1989): 489 U.S. ........................................................................................... 9

*Papp v. Fore-Kast Sales Co.*,
    842 F.3d 805 (3d Cir. 2016) ......................................................................................... 2, 7

*Redd v. Heritage Valley Health System*,
    No. 2:23-cv-01212-CB (July 3, 2023) ............................................................................... 1

*Ruppel v. CBS Corp.*,
    701 F.3d 1176 (7th Cir. 2012) .................................................................................. 5, 9

*Smith v. Facebook*,
    745 F. App'x 8 (9th Cir. 2018) ....................................................................................... 9

*Watson v. Philip Morris Cos., Inc.*,
    551 U.S. 142 (2007) .............................................................................................. 3, 4, 6, 7

*Willingham v. Morgan*,
    395 U.S. 402 (1969) ................................................................................................... 7, 10

**Statutes/Regulations**

28 U.S.C. § 1442(a)(1) ............................................................................................. 2, 7, 8, 9

42 U.S.C. § 300jj-11(a) ..................................................................................................... 4

Health Insurance Portability and Accountability Act. Pub. L. No. 104-191, §
    264, 110 Stat.1936 (HIPAA) .................................................................................... 8, 9

42 C.F.R. § 495.20(f)(12)(i)(B) ...................................................................................... 4, 5

**Other Authorities**

Exec. Order 13335 ............................................................................................................. 4

I.      INTRODUCTION

Plaintiff John Doe alleges that Defendant Heritage Valley Health System, Inc.[1] ("Heritage Valley") engaged in unlawful wiretapping and invaded his privacy by installing third-party source code for the Meta Pixel on Heritage Valley's publicly available website. Specifically, Doe alleges that the Meta Pixel caused the transmission of certain internet metadata from his internet web browser to third party internet web servers when he visited Heritage Valley's website and accessed Heritage Valley's patient portal.

Based on the allegations in Doe's Complaint, this case belongs in federal court.[2] The bulk of Doe's complaint relates to the alleged web properties of the Heritage Valley patient portal. *See* Compl. ¶¶ 181-94. Heritage Valley's patient portal is the result of the federal government's directive for individuals to have the ability to access their health records online. To that end, the federal government worked in substantial partnership with healthcare providers like Heritage Valley to make sure this online access existed. Seeking to hold Heritage Valley liable under Pennsylvania law for the very thing that the federal government wanted to occur as a matter of federal policy under federal law gives

---

[1] The entities are incorrectly named in the Complaint. The correct names for Defendants are Heritage Valley Health System, Inc., Valley Medical Facilities, Inc. d/b/a Heritage Valley Beaver, Valley Medical Facilities, Inc. d/b/a Heritage Valley Sewickley and Valley Medical Facilities, Inc. d/b/a Heritage Valley Kennedy (nka Valley Medical Facilities, Inc. d/b/a Heritage Valley Sewickley, Kennedy Campus) and Heritage Valley Multispecialty Group, Inc.  Heritage Valley Health System, Inc. is the parent corporation.

[2] Heritage Valley is not alone in its belief that this case belongs in federal court. In the interim between Heritage Valley removing this case to federal court and Plaintiff Doe filing his Motion for Remand, another class action complaint was filed in this Court against Heritage Valley asserting similar claims on behalf of a similar class based upon the alleged disclosure of confidential information by third-party source code on Heritage Valley's website and patient portal. *See Redd v. Heritage Valley Health System*, No. 2:23-cv-01212-CB (Compl. filed July 3, 2023). Plaintiff Redd alleges federal jurisdiction. *Id.* ¶¶ 40-43.

rise to federal jurisdiction in this Court under 28 U.S.C. § 1442(a)(1). Accordingly, the Court should deny Doe's Motion for Remand. *See Doe I v. UPMC*, No. 2:20-cv-359, 2020 WL 4381675, (W.D. Pa. Jul. 31, 2020).

## II.     ARGUMENT

### A. Heritage Valley Properly Removed This Case Pursuant to 28 U.S.C. § 1442(a)(1).

Under the federal officer removal statute, a federal court has jurisdiction over a civil action that is directed at "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). The Third Circuit recognizes that, unlike the general removal statute, "'the federal officer removal statute is … 'broadly construed' in favor of a federal forum.'" *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016) (citations omitted). To invoke federal subject matter jurisdiction under § 1442(a)(1), the defendant bears the burden of showing: (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant are "for, or relating to" an act under color of federal office; and (4) the defendant raises a colorable federal defense to the plaintiff's claims. *Id*. at 812.

Plaintiff does not dispute that each Heritage Valley Defendant is a corporation, and therefore a "person" for purposes of the statute. Compl. ¶ 41 (Dkt 1). Because the other elements are satisfied as well, federal jurisdiction is proper.

#### a. Heritage Valley Acted Under a Federal Officer.

The heart of Plaintiff's argument focuses on the "acting under" requirement, and

whether Heritage Valley was in fact acting under color of federal law in making the patient portal available online. *See* Pl. Mot. Remand at 5-8 (Dkt. 10). The Supreme Court analyzed the relationship necessary to satisfy the "acting under" prong in *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007). The words "acting under" as used in the statute must be "liberally construed." *Id.* at 147. For a private entity to be "acting under" a federal officer, the private entity must be involved in "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* at 152. While the "help or assistance" necessary to bring a private person within the scope of the statute does not include simply complying with the law, it is sufficient if the private party is subject to the "instruction, direction, or guidance" of a federal agency. *Id.* at 151-52.

In *Watson*, the plaintiffs alleged that Philip Morris Companies violated state law through, among other things, the design, performance, and testing of Philip Morris cigarettes. *Id.* at 146. Philip Morris removed, claiming that the FTC delegated testing authority of its cigarettes to an industry-financed laboratory and therefore Philip Morris was "'acting under' officers of the FTC when it conducts cigarette testing." *Id.* at 154. The Supreme Court disagreed and defined the scope of the term "acting under" using the following language:

> The relevant relationship is that of a private person "*acting under*" a federal "officer" or "agency." In this context, the word "under" must refer to what has been described as a relationship that involves "acting in a certain capacity, considered in relation to one holding a superior position or office." That relationship typically involves "subjection, guidance, or control." *See also* Funk & Wagnalls New Standard Dictionary of the English Language 2604 (1942) (defining "under" as meaning "[s]ubordinate or subservient to," "[s]ubject to guidance, tutorship, or direction of"); 18 Oxford English Dictionary, supra, at 949 ("[s]ubject to the instruction, direction, or guidance of"). In addition, precedent and statutory purpose make clear that the private person's "acting under" must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.

3

551 U.S. at 151-52 (internal citations omitted).

*Watson* thus establishes a contextual analysis for the "acting under" requirement. There must be some element – whether this be "any contract," or "any payment," or "any employer/employee relationship," or "any principal/agent arrangement," or any other "evidence of any delegation of legal authority" – that raises the relationship above mere compliance with the law, into a different type of federal "assistance." *Id*. at 151-52. *Watson* plainly recognizes that the words "acting under" mean "[s]ubject to the instruction, direction, or guidance of." The Supreme Court left open the prospect of affording federal removal jurisdiction to private persons in those circumstances where, as here, *there is something more. See, e.g.*, Compl. ¶¶ 15-18, 30, 61, 106, 171, 181-99, 222.

Since at least 2004, the federal government – through executive order, legislation, and regulatory action – has directed and overseen a public-private initiative to develop a nationwide infrastructure of health information technology. *See, e.g.,* Exec. Order 13335, at pg. 702 (Apr. 27, 2004)(President Bush ordering the National Coordinator to "develop, maintain, and direct" the nationwide implementation of health information technology.") (Ex. A); *see* 42 U.S.C. § 300jj-11(a) (President Obama signing into law HITECH and codifying the Office of the National Coordinator for Health Information Technology) (Ex. B); *see* 2011 to 2015 Federal Health Information Strategic Plan (Ex. C).

From the outset, one of the central tenets of this federal initiative was for healthcare providers to provide patients with the ability to access their health care records online. *See* 42 C.F.R. § 495.20(f)(12)(i)(B) ("Beginning in 2014, provide patients with the ability to view online, download, and transmit information about a hospital admission.") (emphasis added)); *see also id*. at (ii)(B) (same)); Federal Health IT Strategic Plan (ONC): 2008-2012 (June 3, 2008) ("Patient-focused Health Care: Enable the transformation to

4

higher quality, more cost-efficient, patient-focused health care through electronic health information access and use by care providers, and by patients and their designees.") (Ex. D); A 10-Year Vision to Achieve an Interoperable Health IT Infrastructure, at pgs. 2-3 (June 25, 2014) (providing that by 2024 "all individuals, their families, and care providers should be able to send, receive, find, and use health information in a manner that is appropriate, secure, timely, and reliable") (Ex. E).

To meet these criteria, the federal government *directed* health care providers to make online patient portals available to their patients. *See* HealthIT.gov Nat'l Learning Consortium, How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use, at 1 (Ex. F). The National Coordinator further *guided* healthcare providers to a "Patient Engagement Playbook," described as "a tool for clinicians, health care practice staff, hospital administrators, and others who want to leverage health IT – particularly electronic health records (EHR) patient portals – to engage patients in their health and care." ONC, Patient Engagement Playbook, at 1 (Ex. G). The Playbook *instructed* healthcare providers to use it as "an important tool for *our mission* to help clinicians and their patients adopt and adapt to patient portals and patient-generated health data." *Id*. at 5/81 (emphasis added).

Thus, when Doe alleges that Heritage Valley violated Pennsylvania law by transferring information to a third-party website server each time he clicked on the patient portal link, he is attempting hold Heritage Valley liable under Pennsylvania state law for an action taken under color of federal law: Heritage Valley's providing patients like with Plaintiff with the ability to access their health care records online. *See Ruppel v. CBS Corp.,* 701 F.3d 1176, 1180 (7th Cir. 2012) (holding "the protection which the law thus furnishes to the marshal and his deputy, also shields all who lawfully assist him in the

5

performance of his official duty") (*quoting Davis v. South Carolina*, 107 U.S. 597, 600 (1883)); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 942 (7th Cir. 2020) (allowing removal where "[w]ithout the aid of ISR, the government would have had to manufacture the relevant items on its own. For these reasons, this is not simply a case of compliance, but *assistance*.") (emphasis in original).

In *Doe I v. UPMC*, Judge Horan of this Court held that a healthcare entity was "acting under" a federal superior when it participated in the very same program described above. No. 2:20-cv-359, 2020 WL 4381675, (W.D. Pa. Jul. 31, 2020); *see also Doe v. ProMedica Health Sys., Inc.*, No. 20-cv-1581, 2020 WL 7705627, at *2–3 (N.D. Ohio Oct. 30, 2020). This Court should follow the reasoning of Judge Horan and likewise find that Heritage Valley was "acting under" federal authority. Doe's citation to non-binding decisions from other jurisdictions (namely California district courts) hold no precedential value and should be ignored.

Doe argues that this Court "misfocused" in *UPMC* and did not address the key issue of "whether the defendant was 'providing a service the federal government would itself otherwise have to provide." Pl. Mot. at 6 (quoting *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 405 (3d Cir. 2021)). But neither *Watson* and its progeny, nor *Maglioli* for that matter, stand for such a narrow proposition. To begin with, Doe splices the *Maglioli* quote to make it appear as if the Third Circuit held that the sole way to sustain federal officer removal is to "assist or help carry out the *duties* of a federal superior" **by** "provid[ing] a service the federal government would itself otherwise have to provide." *Id* at 2, 6. But read in context, "assisting with duties" and "providing services" are two completely independent ways to invoke federal officer removal, not one as Doe's motion attempts to convey:

6

> The nursing homes here do not assist or help carry out the duties of a federal superior. They are not government contractors. *See Papp*, 842 F.3d at 812–13. They do not have the close relationship with the federal government that we recognized in the nonprofit community defenders. They are not delegated federal authority, nor do they provide a service that the federal government would otherwise provide.

*Maglioli*, 16 F.4th 393, 405.

In this way, *Maglioli* comports with *Watson* and actually supports Heritage Valley's removal argument. "Acting under" requires only that the conduct "involve an effort to *assist*, or to help *carry out*, the federal supervisor's duties or tasks," not both, and it does not require that Heritage Valley perform the task in lieu of or at the specific direction of the government. *Papp*, 842 F.3d at 812 (emphasis in the original; marks and citation omitted). In fact, the Third Circuit has "explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Id.* at 813. And that is precisely what Heritage Valley is doing – assisting the federal government with its initiative to provide patients like Doe with online access to their health care records online.

### B. Plaintiff's Claims Are "for or Relate to" Acts Under Color of the Federal Office.

Removal under § 1442(a)(1) also requires a finding that the claims against the defendant are "for, or relating to" an act under color of federal office. *Willingham v. Morgan*, 395 U.S. 402, 409 (1969). Doe alleges that there is no nexus between his claims and Heritage Valley's participation in the Meaningful Use Program because "the government never ordered Heritage Valley to capture and send patients PHI to

Facebook."³ Pl. Mot. at 8. He takes issue with Heritage Valley not citing a regulation or statute going to its assertion that the Meaningful Use Program envisions cookies and website analytics to promote the patient portal and make it user friendly. *Id.* at 9. The statute does not require that every causal act be "expressly authorized by a federal statute," and the statutory language "or relating to" in 28 U.S.C. § 1442(a)(1) was added specifically to "broaden the universe of acts that enable Federal officers to remove to Federal court." *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 462, 471-72 (3d Cir. 2015), as amended (June 16, 2015) (discussing legislative history of federal officer removal statute).

"In order to meet the 'for or relating to' requirement, 'it is sufficient for there to be a connection or association between the act in question and the federal office.'" *Id.* at 471. Here, the allegations of Doe's Complaint relate to how Heritage Valley fulfills the criteria set forth by the federal government for participation in and payment of its assistance in carrying out the Meaningful Use Program. As Plaintiff admits, the purpose of the program is "to encourage hospitals to digitize their records and allow patients to access their resources online." Pl. Mot. at 8. Following the Playbook and resources provided by the federal government, Heritage Valley did precisely that and the "policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (quoting *Willingham*, 395 U.S. at 407).

---

³ On this allegation, Doe also relies on guidance recently issued by the United States Department of Health and Human Services regarding the use of Online Tracking Technologies by HIPAA covered entities. Pl. Mot. at 4. Heritage Valley disputes any allegation that it disclosed patient's PII, but notes that "such regulatory guidance only applies prospectively." *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 2349606, at *5 (N.D. Ill. Mar. 3, 2023) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n. 31 (1979)).

### C. Heritage Valley Raises Colorable Federal Defenses to Plaintiff's Claims.

Heritage Valley asserts a colorable federal defense in this case, namely, that the information allegedly disclosed "is outside the purview of PHI protected by federal law." Compl. ¶ 65. Doe responds by citing to a federal statute and claiming that "HHS has already rejected [this] argument (Pl. Mot. at 9)," and in doing so, concedes that the defense to an alleged HIPAA violation is subject to a federal court's interpretation.

As the Supreme Court has held, when an alleged, and disputed, federal statutory violation forms the basis for plaintiff's state law claims, removal under 28 U.S.C. § 1442(a)(1) is appropriate. "To assert that a federal statute does *not* impose certain obligations whose alleged existence forms the basis of a civil suit is to rely on the statute in just the same way as asserting that the statute *does* impose other obligations that may shield the federal officer against civil suits." *Mesa v. California*, 489 U.S. 121, 130 (1989) (emphasis in original); *see also Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (removal is proper "despite the nonfederal cast of the complaint" if "the defense depends upon federal law"). Further, a defendant need not show that it is entitled to prevail, only that it has a plausible federal defense. *See Ruppel v. CBS Corp.,* 701 F.3d 1176, 1182 (7th Cir. 2012).

In similar cases challenging alleged website privacy violations, other federal courts have held the type of information at issue here is *not* protected under HIPAA. *See Smith v. Facebook*, 745 F. App'x 8, 9 (9th Cir. 2018) ("The district court also properly rejected Plaintiffs' claims that the collected data is subject to more stringent disclosure requirements under the Health Insurance Portability and Accountability Act of 1996 ('HIPAA')"); *see also Kurwowski v. Rush Sys. for Health,* No. 22 C 5380, 2023 WL

9

2349606, at *4-5, 7 (N.D. Ill. Mar. 3, 2023) (following *Smith*); *Cousin v. Sharp Healthcare*, No. 22-cv-2040-MMA (DDL), 2023 WL 4484441, at *3 (S.D.Cal. July 12, 2023) ("[T]his type of data collection is not considered "Protected Health Information" because nothing about [the] information relates specifically to Plaintiffs' health and the information is general health information that is accessible to the public at large.) (citations omitted.). Thus, Heritage Valley has a colorable defense.

While the colorable federal defense on its own is sufficient for removal, the acting under analysis set forth above also shows how preemption could factor into Heritage Valley's defense of Does' claims related to the patient portal, as both *UPMC* and *ProMedica* held. *UPMC*, 2020 WL 4381675, at *7; *ProMedica Health Sys., Inc.*, 2020 WL 7705627, at *2–3 (both finding federal preemption defenses colorable with respect to patient portal allegations). This federal interest exists here, and Heritage Valley has a plausible federal defense sustaining removal pursuant to the federal officer removal statute. *Willingham*, 395 U.S. at 406; *Bor-Son Building Corp.*, 572 F.2d 174, 181 (8th Cir. 1978) (same).

## III.   CONCLUSION

For the foregoing reasons, the Court should deny Doe's Motion for Remand and retain jurisdiction of this case pursuant to the federal officer statute.

| | |
|---|---|
| Dated:   July 24, 2023 | **BAKER & HOSTETLER LLP**<br><br>*/s/ Edward J. McAndrew*<br>Edward J. McAndrew (Pa. I.D. 77103)<br>Justin M. Kadoura (Pa. I.D. 324212)<br>1735 Market Street, Suite 3300<br>Philadelphia, PA 19103<br>Tel.: (215) 564-8386<br>Email:  emcandrew@bakerlaw.com<br>Email:  jkadoura@bakerlaw.com<br><br>Paul G. Karlsgodt<br>1801 California Street, Suite 4400<br>Denver, Colorado 80202<br>Tel.: (303) 861-0600<br>Email: pkarlsgodt@bakerlaw.com<br><br>Carrie Dettmer Slye<br>Jennifer L. Brumfield (*Pro Hac Vice Pending*)<br>312 Walnut Street, Suite 3200<br>Cincinnati, Ohio 45202-4074<br>Tel.: (513) 929-3400<br>cdettmerslye@bakerlaw.com<br>jbrumfield@bakerlaw.com<br><br>*Attorneys for Defendants Heritage Valley Health System, Inc. d/b/a Heritage Valley Sewickley Hospital, Heritage Valley Beaver Hospital and Heritage Valley Kennedy Hospital, and Heritage Valley Multispecialty Group, Inc.* |

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 24, 2023, the foregoing was filed with the Clerk of the Court using CM/ECF, which will send notice to the registered attorneys of record that the document has been filed and is available for viewing and downloading.

Dated: July 24, 2023

                */s/ Edward J. McAndrew*
                Edward J. McAndrew
                Identification No.: 77103
                1735 Market Street, Suite 3300
                Philadelphia, PA 19103
                Tel.: (215) 564-8386
                Email:  emcandrew@bakerlaw.com

                *Attorney for Defendants Heritage Valley Health System, Inc. d/b/a Heritage Valley Sewickley Hospital, Heritage Valley Beaver Hospital and Heritage Valley Kennedy Hospital, and Heritage Valley Multispecialty Group, Inc.*