IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> HERITAGE VALLEY HEALTH SYSTEM, INC. d/b/a HERITAGE VALLEY SEWICKLEY HOSPITAL, HERITAGE VALLEY BEAVER HOSPITAL, and HERITAGE VALLEY KENNEDY HOSPITAL; and HERITAGE VALLEY MULTISPECIALTY GROUP, INC., <br><br> Defendants. | Civil Action No. 23-1044 |

**MEMORANDUM OPINION**

Plaintiff, on behalf of himself and a putative class of Pennsylvania citizens, filed a Complaint in the Court of Common Pleas of Beaver County, Pennsylvania, asserting claims against Defendants Heritage Valley Health System, Inc. and related entities ("Heritage Valley")[1] pursuant to the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") and Pennsylvania common law. (Docket Nos. 1-2 and 1-3 ("Compl.")). Defendants removed the action to this Court pursuant to the federal officer removal statute. *See* 28 U.S.C. § 1442(a)(1). (Docket No. 1). Plaintiff then filed a Motion to Remand (Docket No. 9), which has been fully briefed and is ready for disposition. (Docket Nos. 10, 18, 22). For the reasons set forth below, Plaintiff's Motion to Remand will be granted.

---

[1] Defendants assert that they are named incorrectly in the Complaint, and that their correct names are Heritage Valley Health System, Inc., Valley Medical Facilities, Inc. d/b/a Heritage Valley Beaver, Valley Medical Facilities, Inc. d/b/a Heritage Valley Sewickley, and Valley Medical Facilities, Inc. d/b/a Heritage Valley Kennedy, and Heritage Valley Multispecialty Group, Inc. (Doc. No. 18 at 5 n.1). Defendants will be referred to herein collectively as "Heritage Valley" for ease of reference.

1

I.  **BACKGROUND**

Plaintiff, on behalf of a putative class, alleges that Heritage Valley violated their statutory and common law medical privacy rights[2] by using tracking pixels, including Meta Pixel,[3] on its website and patient portal, thus disclosing highly sensitive personal information to third parties such as Facebook and Google without the patients' knowledge or consent.  (Compl.).

According to the Complaint, Heritage Valley operates an interactive website and patient portal for communication with its patients, and it encourages its patients to use digital tools on the website to seek and receive health services.  (Compl., ¶¶ 27-29).  Patients can use the website to find doctors, research medical issues and treatment options, join support groups, and otherwise learn about Heritage Valley's services.  (*Id.*).  Heritage Valley also maintains an on-line portal for patients to schedule appointments, access medical records, view lab results, and exchange communications with their health care providers.  (*Id.* ¶ 30).  Heritage Valley's website expressly assures on-line visitors, "We understand that health is a very personal, private subject, and we want you to feel as comfortable as possible," and, "We do not partner with or have special relationships with any Ad Network companies.  This means we do not give your information to third parties for advertising or marketing purposes."  (*Id.* ¶ 2).

Plaintiff alleges that despite expectations of patient privacy drawn from Heritage Valley's legal duties and express promises of confidentiality, Heritage Valley intentionally incorporates source code in its website and uses Meta Pixel and other tracking pixels and related technologies

---

[2]  Count One of the Complaint avers a claim that Heritage Valley's conduct violates the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. Stat. & Cons. Stat. § 5701 *et seq*. (Compl., ¶¶ 315-330).  Counts Two, Three, and Four, respectively, aver Pennsylvania common law claims for Invasion of privacy - Intrusion Upon Seclusion (*id.* ¶¶ 331-356), Breach of Duty of Confidentiality (*id.* ¶¶ 357-368), and Unjust Enrichment (*id.* ¶¶ 369-376).

[3]  Meta Pixel is a tracking pixel provided by Facebook.  (Docket No. 1-2, ¶ 75).

to disclose the contents of patients' personally identifiable and protected healthcare information captured from their use of the website to Facebook, Google, and other third-party marketing companies without the patients' knowledge, information, or consent. (Compl., ¶¶ 31-32, 40-41). By design, these third parties receive the exact contents of patients' communications with Heritage Valley derived from whenever patients type text into the website, click a hyperlink, etc., including the dates and types of medical appointments made, and the specific doctors being seen, thus permitting companies like Facebook and Google to discern that a specific patient was seeking a specific type of medical treatment for a specific medical condition, such as cancer, addiction, heart disease, Alzheimer's, or pregnancy. (*Id*. ¶¶ 41-42, 175). These third parties then use this private and personally identifiable medical information for targeted marketing purposes. (*Id*. ¶ 58).

Heritage Valley removed this case pursuant to 28 U.S.C. § 1442(a)(1). In doing so, Heritage Valley asserts that this case belongs in federal court because its website and patient portal is the result of the federal government's directive for individuals to have the ability to access their health records online and that Plaintiff's claims relate to conduct undertaken by Heritage Valley "in furtherance of the federal government's Meaningful Use Program." (Docket No. 1, ¶ 17). In its Notice of Removal, Heritage Valley outlines the federal government's public-private initiative to develop a nationwide infrastructure for health information technology, of which the "Meaningful Use" Program is a part. (*Id.* ¶¶ 18-38).

According to Heritage Valley, this federal initiative began in 2004 when President Bush issued Executive Order 13335 establishing a National Health Information Technology Coordinator ("National Coordinator") to initiate a "nationwide implementation of interoperable health information technology in both the public and private health care sectors." (Docket No. 1, ¶ 22 (citing Exec. Order No. 13335, 69 Fed. Reg. 24059 (Apr. 27, 2004))). Then, Congress enacted the

3

Health Information Technology for Economic and Clinical Health Act of 2009 (the "HITECH Act"), 123 Stat. 115, 247 (2009), which statutorily authorized the Office of the National Coordinator for Health Information Technology ("ONC") and appropriated billions of dollars to the Center for Medicare and Medicaid Services ("CMS") to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." (Docket No. 1, ¶ 23 (quoting Pub. L. No. 111-5, 123 Stat. 115, 246)). In doing so, Congress tasked the National Coordinator with:

> . . . update[ing] the Federal Health IT Strategic Plan (developed as of June 3, 2008) to include specific objectives, milestones, and metrics with respect to: . . . (i) [t]he electronic exchange and use of health information and the enterprise integration of such information . . . [and] (vii) [s]trategies to enhance the use of health information technology in improving the quality of health care.

(*Id.* ¶ 24 (quoting 42 U.S.C. § 300jj-11(c)(3)(A))).

Consistent with its Congressional mandate, the ONC published guidance for private providers to follow, including in five-year plans. (Docket No. 1, ¶ 25). Heritage Valley notes that, in its 2015-2020 plan, ONC directed federal agencies to collaborate with private stakeholders to build a culture of electronic health information access and use. (*Id.* ¶ 26). One aspect of this strategy, which Heritage Valley characterizes as "critical," is CMS's Meaningful Use Program. (*Id.* ¶ 28 (citing 42 C.F.R. § 495.2-495.370, and Medicare and Medicaid Programs; Electronic Health Record Incentive Program, 75 Fed. Reg. 44314 (July 28, 2010))). This program encourages and incentivizes eligible professionals, eligible hospitals, and critical access hospitals to adopt, implement, upgrade, and demonstrate meaningful use of certified electronic health record technology, including interoperable patient "portals" that, beginning in 2014, would provide patients the ability to view online, download, and transmit information about a hospital admission.

4

(*Id.* ¶ 31 (citing 42 C.F.R. § 495.20(f)(12)(i)(B)).  Heritage Valley also points to ONC guidance on how to "actively promote and facilitate portal use" and how providers can optimize such portals, explaining that they "must be engaging and user-friendly."  (*Id.* ¶ 32).  Heritage Valley cites guidance including ONC's "Patient Engagement Playbook" (last updated Apr. 17, 2019), which is described as a "tool for clinicians, health care practice staff, hospital administrators, and others who want to leverage health IT – particularly electronic health records (EHR) patient portals – to engage patients in their health and care."  (*Id.* ¶ 33).

Heritage Valley identifies regulations for attesting to the National Coordinator and to CMS progress with respect to patient engagement for use of online means to view, download, and transmit specified healthcare data.  (Docket No. 1, ¶ 34 (citing 45 C.F.R. § 170.315(e)(1)(i))).  Heritage Valley also identifies a statute enabling incentive payments from the Federal Supplementary Medical Insurance Trust Fund to eligible providers who reach certain levels of engagement with electronic health record usage through a patient portal.  (*Id.* ¶ 35 (citing 42 U.S.C. § 1395w-4(o))).  Finally, Heritage Valley also points to CMS's own portal as offering a model for private providers to follow.[4]  (*Id.* ¶ 36).

Within the context of this statutory and regulatory environment, Heritage Valley seeks to invoke this Court's jurisdiction, contending that the federal government is "incentivizing, regulating, monitoring, and supervising [its] actions in the Meaningful Use [P]rogram to meet the federal government's national priority of interoperable health information technology."  (Docket No. 1, ¶¶ 19, 44).  Heritage Valley asserts that it has "acted within the penumbra of federal action and office," and thus has satisfied the requirements of federal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).  (*Id.* ¶ 21).

---

[4]  Heritage Valley also avers that CMS's portal "relies on third-party marketers, like Google and Facebook" (Docket No. 1, ¶ 37), albeit without citation to any statutory mandate for doing so.

## II.     DISCUSSION

A defendant such as Heritage Valley who faces a lawsuit in state court may remove that lawsuit to federal court when certain jurisdictional criteria are met. *See* 28 U.S.C. §§ 1441-55. In doing so, the removing defendant must provide, among other things, a "notice of removal . . . containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Much like a complaint, a notice of removal "must allege the underlying facts supporting each of the requirements for removal jurisdiction." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila. (Defender Ass'n)*, 790 F.3d 457 (3d Cir. 2015) (internal citation and quotation marks omitted). If the plaintiff believes that the federal court does not have subject matter jurisdiction and that removal was improper, then the plaintiff may seek to remand the lawsuit back to state court. *See* 28 U.S.C. § 1447(c). A motion to remand is analyzed under the same framework as a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016). The removing defendant, as the party seeking to invoke the Court's subject matter jurisdiction, carries the burden of establishing the Court's jurisdiction. *See Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Here, Plaintiff challenges subject matter jurisdiction without disputing the facts alleged in Heritage Valley's Notice of Removal, thus requiring the Court to consider the allegations contained in the Notice of Removal as true and to be construed in the light most favorable to Heritage Valley. *See Papp*, 842 F.3d at 811.[5]

---

[5] Motions for remand may either make a facial or a factual challenge to a notice of removal. *See Papp*, 842 F.3d at 811. In a facial challenge, the Court looks to the face of the notice of removal and accepts as true the facts alleged by the defendant. *See id.*; *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). By contrast, a factual challenge "involves the presentation of competing facts," but "should only be considered to the extent that the facts presented, if persuasive, would directly undermine" an element required for jurisdiction. *Papp*, 842 F.3d at 811 & n. 4.

Heritage Valley seeks to implicate this Court's jurisdiction pursuant to the federal officer removal statute, which provides, in relevant part, that a state civil action may be removed to federal court if it "is against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).  "As the plain language of Section 1442(a) indicates, it is intended to protect federal officers from interference with their official duties through state-court litigation."  *Quinto v. Regents of the Univ. of Cal.*, Case No. 3:22-cv-04429, 2023 WL 1448050, at *2 (N.D. Cal. Feb. 1, 2023) (*citing Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981)).  It supplies a federal court forum in response to concerns that state court proceedings may reflect "local prejudice" against unpopular federal laws or federal officials; states hostile to the federal government may impede federal law; and states may deprive federal officials of a federal forum in which to assert federal immunity defenses.  *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 150 (2007).

To invoke this Court's jurisdiction pursuant to Section 1442(a), Heritage Valley must establish that:  (1) it is a "person" within the meaning of the statute; (2) Plaintiff's claims are based upon its conduct "acting under" the United States, its agencies, or its officers; (3) Plaintiff's claims against Heritage Valley are "for, or relating to" an act under color of federal office; and (4) it raises colorable federal defenses to Plaintiff's claims.  *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 404 (3d Cir. 2021); *Papp*, 842 F.3d at 812; *Defender Ass'n*, 790 F. 3d at 467.  The parties do not dispute that Heritage Valley is a "person" within the meaning of Section 1442(a)(1), but they do dispute whether each of the other elements for removal have been established.  Because the Court finds that Heritage Valley was not "acting under" a federal officer when it purportedly captured and disclosed Plaintiff's personal health information to third-party marketers, the Court

7

need not consider whether Plaintiff's claims against Heritage Valley are "for, or relating to" an act under color of federal office or that Heritage Valley raises colorable federal defenses to Plaintiff's claims.

Heritage Valley and its affiliated entities are private parties, not federal actors. Nevertheless, Heritage Valley may invoke federal officer removal if it demonstrates it was "acting under" a federal agency or officer. *Watson*, 551 U.S. at 147. The phrase "acting under" is broad and is to be construed liberally, yet it is not boundless. *Maglioli*, 16 F.4th at 404; *see also Watson*, 551 U.S. at 147 ("[A] liberal construction nonetheless can find limits in a text's language, context, history, and purposes."). "Merely complying with federal laws and regulations is not 'acting under' a federal officer" for purposes of removal, as even someone "subject to detailed regulations and whose 'activities are highly supervised and monitored' is not 'acting under' a federal officer." *Maglioli*, 16 F.4th at 404 (quoting *Watson*, 551 U.S. at 153). As instructed by the Supreme Court, "[i]n this context, the word 'under' must refer to . . . a relationship that involves 'acting in a certain capacity, considered in relation to one holding a superior position or office.'" *Watson*, 551 U.S. at 151 (quoting 18 Oxford English Dictionary 948 (2d ed. 1989)). Therefore, to be "acting under" a federal agency or officer, the person must undertake "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152 (emphasis in original); *see Maglioli*, 16 F.4th at 404-05.

Neither the parties nor the Court have identified any controlling authority determining that a health care provider who created and operates a website and patient portal in accord with CMS's Meaningful Use Program, and who received incentive payments from CMS for doing so, is "acting under" a federal agency or officer for removal purposes pursuant to Section 1442(a). Heritage Valley cites two district court decisions, including one from this district, holding that such conduct

does satisfy the "acting under" element for purposes of removal. *See Doe I v. UPMC*, No. 2:20-cv-359, 2020 WL 4381675 (W.D. Pa., July 31, 2020) (Horan, J.); *Doe v. ProMedica Health Sys., Inc.*, Case No. 3:20-CV-1581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020). Plaintiffs, however, cite to a plethora of district court decisions holding otherwise. *See, e.g.*, *Mohr v. Trustees of the Univ. of Pa.*, CIVIL ACTION NO. 23-cv-731, 2023 WL 3044594 (E.D. Pa. April 20, 2023); *Doe v. BJC Health Sys.*, Case No. 4:22 CV 919, 2023 WL 369427 (E.D. Mo. Jan. 10, 2023); *Doe v. Cape Cod Healthcare, Inc.*, No. 23-cv-10080, Docket No. 10 (D. Mass. Jan. 25, 2023); *Heard v. Torrance Mem'l Med. Ctr.*, No. CV 22-09466, 2023 WL 2475544 (C.D. Cal. March 13, 2023); *Doe v. Torrance Mem'l Med. Ctr.*, No. 23-01237, 2023 WL 2916548 (C.D. Cal. April 12, 2023); *Browne v. Cedars-Sinai Health Sys.*, No. CV 23-01551, 2023 WL 3095551 (C.D. Cal. April 26, 2023); *Doe v. Hoag Mem'l Presbyterian Hosp.*, Case No.: SACV 23-00444, 2023 WL 3197716 (C.D. Cal. May 2, 2023); *Quinto v. Regents of the Univ. of Cal.*, Case No. 3:22-cv-04429, 2023 WL 1448050 (N.D. Cal. Feb. 1, 2023). (*See also* Docket No. 22 (Plaintiff's Reply in Support of Motion to Remand) at 5 n.2 (citing additional cases)).

Having independently reviewed the text, context, history, and purposes of Section 1442(a), along with the applicable case law and the factual averments set forth in Heritage Valley's Notice of Removal, this Court joins the vast majority of district courts in concluding that a health care provider, such as Heritage Valley, who voluntarily creates and operates a website and patient portal to provide its patients the ability to view, download, and transmit their medical information in accord with CMS's Meaningful Use Program, is not "acting under" a federal officer and thus cannot invoke this Court's jurisdiction.

Heritage Valley voluntarily elected to participate in the Meaningful Use Program and to meet CMS's benchmarks. While CMS proscribes the requirements for participation, Heritage

9

Valley's voluntary compliance with those requirements is, at most, akin to an entity subject to detailed regulations and whose "activities are highly supervised and monitored" but, nonetheless, does not render it to be "acting under" a federal officer. *Maglioli*, 16 F.4th at 404 (*citing Watson*, 551 U.S. at 153). Rather, to be "acting under" a federal officer, Heritage Valley must "demonstrate something beyond regulation or compliance. [It] must show that [its] actions 'involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.'" *Id*. (*citing Watson*, 551 U.S. at 152) (emphasis in original). A government contractor is a classic example of a person "acting under" a federal officer when helping "the Government to produce an item that it needs." *Id.* at 405; *see Papp*, 842 F.3d at 812-13; *see also Defender Ass'n*, 790 F.3d at 469 (holding that a non-profit entity created through the Criminal Justice Act was "acting under" the Administrative Office ("AO") of the Federal Judiciary because it had been delegated the authority, in affiliation with the AO, to provide legal representation to criminal defendants that the federal government would itself otherwise have to provide).

Notwithstanding these district court decisions holding to the contrary, Heritage Valley urges this Court to adopt the reasoning in *Doe v. UPMC* and *Doe v. ProMedical Health Sys., Inc.* that it is "acting under" a federal agency or officer by electing to participate in the Meaningful Use Program and complying with its requirements. Those decisions posit that participation in the Meaningful Use Program is less like the regulator-regulated relationship in *Watson* and more like the government contractor relationship in *Papp*. This Court disagrees and concludes that there is a consequential difference between a government-contractor relationship and the relationship between CMS and participants in its Meaningful Use Program. As instructed by the Supreme Court in *Watson*, Heritage Valley must show that its "conduct is done in service of the Government's ends by 'help[ing] officers fulfill other basic governmental tasks' and to 'perform[]

10

a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.'" *Valladolid v. Memorial Health Servs.*, Case No. CV 23-3007, 2023 WL 4236179, at *6 (C.D. Cal. June 27, 2023) (*quoting Watson*, 551 U.S. at 153-54) (emphasis omitted).

Here, Heritage Valley did not enter a contract to create or operate a website or patient portal for a federal agency, nor is there any statute that authorizes or obligates the federal government to create and operate this technological infrastructure for use by non-governmental healthcare entities. Rather, the federal government merely encouraged and incentivized Heritage Valley to create and operate a website and patient portal *for itself,* not for the federal government's use. Heritage Valley did not perform a task that the federal government would have had to perform, nor did it involve an effort to assist, or to help carry out, the duties or tasks of a federal superior. *See Watson*, 551 U.S. at 152; *see also Mohr*, 2023 WL 3044594, at * 4 ("CMS may thoroughly describe and fund its EHR goals, develop directives and guidelines, and define the governmental policies it is promoting," but "such directives do not, without more, bootstrap private persons who *choose* to adhere to non-binding directives for financial gain into the category of persons 'acting under' the United States") (emphasis in original)). Accordingly, Heritage Valley's choice to subject itself to certain CMS directives after taking governmental incentives to create and operate its *own* website and patient portal is not "acting under" a federal agency or officer.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand will be granted, and this case will be remanded to the Court of Common Pleas of Beaver County, Pennsylvania.

An Order consistent with this Memorandum Opinion follows.

Dated: October 19, 2023                                    *s/ W. Scott Hardy*
                                                                              W. Scott Hardy
                                                                              United States District Judge

cc/ecf:  All counsel of record